*619 OPINION.
TRAMMell:
The respondent’s deficiency letter dated April 20, 1929, which forms the basis for this appeal, covered the years 1924 to 1927, inclusive, and the period January 1 to January 15, 1928. However, in that letter respondent determined a deficiency only for the year 1925. The original petition filed herein alleged errors in respect of the respondent’s determination of the petitioner’s tax liability for both the years 1925 and 1926, notwithstanding no deficiency was determined for the latter year. The amended petition referred only to the year 1925. At the hearing on March 9, 1932, respondent moved to dismiss as to 1926, which motion, without objection by the petitioner, was granted. Accordingly, this appeal, in so far as it purports to relate to the year 1926, will be dismissed for lack of jurisdiction.
The first issue for consideration here questions the action of the respondent in prorating the amount of $20,000 paid by the petitioner’s decedent during the taxable year 1925 to a broker for negotiating a 99-year lease of certain real estate then owned by the decedent. The lease was surrendered and canceled in 1927. The decedent kept her books on the basis of cash receipts and disbursements, and petitioner contends that the full amount of the commission so paid constituted a business expense and should be allowed as a deduction from gross income for 1925, but further contends that, even if the amount be held to be a capital expenditure, the entire amount should nevertheless be allowed as a deduction for “ depreciation ” in the taxable year. In support of her contention petitioner cites *620 the decision of the United States District Court for the Southern District of New York in Daly v. Anderson, 37 Fed. (2d) 728.
In Central Bank Block Association, 19 B. T. A. 1183; aff'd. 57 Fed. (2d) 5, we held that the total amount of commissions paid by the petitioner for services in procuring the lease of its property for a period of 50 years should be spread ratably over such period and not deducted as an expense in the years in which paid, notwithstanding the petitioner was on a cash receipts and disbursements basis. In that connection we considered the case of Daly v. Anderson, supra, and expressed our dissent therewith.
The petitioner offered no evidence to show that at the time the lease contract was executed, nor at any other time during the calendar year, 1925, it could have been reasonably anticipated that the contract would be surrendered and canceled in 1927 or prior to its expiration. Therefore, the fact that it was subsequently canceled does not affect the amount of the deduction allowable for 1925. The lease contract by its terms extended over a period of 99 years, beginning July 1,1925. The respondent allowed as a deduction from 1925 income % of %9 of the commission paid, and for 1926, he allowed %9, and for 1927,’ the year in which the contract was canceled he allowed the remainder of the total amount not theretofore allowed. On authority of Central Bank Block Association, supra, the respondent’s action on this point, in so far as it affects the tax liability of the petitioner for 1925, is approved. The years 1926 and 1927 are not before us. See also James M. Butler, 19 B. T. A. 718; Evalena M. Howard, 19 B. T. A. 865; Bonwit Teller & Co., v. Commissioner, 53 Fed. (2d) 381; certiorari denied, 284 U. S. 690.
The second issue presented here involves the question whether the amount of $22,070 of the decedent’s income for 1925, which admittedly represents profit comprised in the installment payments received by decedent in said year under the contracts referred to in our findings of fact, should be taxed as capital net gain or as ordinary income.
The Revenue Act of 1926, which is the statute applicable here, provides as follows:
Sec. 208. (a) For the purposes of this title—
(1) The term “capital gain” means taxable gain from the sale or exchange of capital assets consummated after December SI, 1921;
[[Image here]]
(8) The term “ capital assets ” means property held by the taxpayer for more than two years (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale in the course of his trade or business. * * . *
*621 The respondent contends, first, that the sale of the real estate which gave rise to the income in question was consummated prior to December 31,1921, or on April 20,1920, when the decedent entered into the contract or agreement with the Gouchers for the sale of the Greentree Inn, and therefore the amount of profit realized in 1925 was not “ capital gain ” within the meaning of that term, as defined in section 208 (a) (1), supra; and, second, that this property in 1925 was being held by the decedent primarily for sale in the course of her trade or business, since she was then engaged in the real estate business, and hence was not a capital asset as defined in section 208 (a) (8), supra.
The latter contention, we think, is obviously without merit. The evidence shows, and we have so found, that the decedent contracted for the purchase of this property in 1917 solely for investment purposes. At that time she was not engaged in the real estate business, but took possession of the hotel property and thereafter operated it until she made the contract of sale with the Gouchers in 1920. She did not enter the real estate business until 1925, and obviously she was not holding the property during that period primarily for sale in the course of her trade or business. That the property was held by the taxpayer for more than two years is not controverted.
The real question for decision on this point, then, is whether the sale of the property in question was consummated prior to December 31,1921'(on April 20,1920), when the contract for deed was executed between the decedent and the Gouchers, or when the title was passed to the Goucher’s assignees after December 31, 1921, by deed dated March 23, 1925.
In G. Allan Hancock, 25 B. T. A. 607, we held that the sales there involved were not consummated until the purchase money had been paid and the deeds in fact executed and delivered, all of which, in that case as well as in the present case, occurred subsequent to December 31, 1921. The Hancoch case arose under the capital gain provisions of the Revenue Act of 1921, which, so far as material here, are the same as those quoted above from the Revenue Act of 1926. On authority of that decision, the action of the respondent on the second issue in this proceeding is reversed. See also Commissioner v. Swift, 54 Fed. (2d) 746, affirming 20 B. T. A. 1099; and Dahlinger v. Commissioner, 51 Fed. (2d) 662, affirming 20 B. T. A. 176.

As to the year 1986, the proceeding %oill he dismissed for lacle of jurisdiction. As to the year 1985, judgment will he entered under Bule 50.